**ANTONIO F. YOON**
California Bar No. 163961
501 W. Broadway, Suite A-387
San Diego, California 92101
Telephone: (619) 544-0021

Attorney for Mr. Gutierrez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE MARILYN L. HUFF)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 08cr803-H |
| Plaintiff, ) | DATE: September 2, 2008 |
| ) | TIME: 2:00 p.m. |
| v. ) | |
| ) | DEFENDANT'S NOTICE OF MOTIONS AND |
| RAUL GUTIERREZ, ) | MOTION IN LIMINE TO: |
| Defendant. ) | 1) PRECLUDE 404(B) AND 609 EVIDENCE; |
| ) | 2) PRECLUDE THE GOVERNMENT FROM BURDEN SHIFTING; |
| ) | 3) EXCLUDE EXPERT TESTIMONY; |
| ) | 4) EXCLUDE VALUE TESTIMONY; |
| ) | 5) EXCLUDE STRUCTURE TESTIMONY; |
| ) | 6) PRECLUDE THE USE OF GUILT-ASSUMING HYPOTHETICALS |
| ) | 7) NOT SEND THE INDICTMENT INTO THE JURY ROOM DURING DELIBERATIONS; |
| ) | 8) TO VOIR DIRE THE JURY; |
| ) | 9) OBTAIN GRAND JURY TRANSCRIPTS; |
| ) | 10) EXCLUDE ALL EVIDENCE OF MR. GUTIERREZ'S POST-ARREST DEMEANOR; AND, |
| ) | 11) FOR LEAVE TO FILE FURTHER MOTIONS. |

TO: KAREN P. HEWITT, UNITED STATES ATTORNEY;
ALESSANDRA SERRANO, ASSISTANT UNITED STATES ATTORNEY:

Raul Gutierrez, by and through his counsel, Antonio F. Yoon, brings these motions in limine and other trial motions to:

| | | |
|---|---|---|
| 1) | Preclude 404(b) and 609 Evidence; |
| 2) | Preclude the Government from Burden Shifting; |
| 3) | Exclude Expert Testimony; |
| 4) | Exclude Value Testimony; |
| 5) | Exclude Structure Testimony; |
| 6) | Preclude the use of guilt-assuming hypotheticals; |
| 7) | Preclude the indictment from being sent into the jury room during deliberations; |
| 8) | Allow voir dire the jury; |
| 9) | Obtain grand jury transcripts; |
| 10) | Exclude all evidence of Mr. Gutierrez's post-arrest demeanor; and |
| 11) | For Leave to File Further Motions. |

Mr. Gutierrez brings these motions pursuant to the Fourth, Fifth and Sixth Amendments to the United States Constitution, Fed. R. Crim. P. 12, 16 and 26, and all other applicable statutes, case law and local rules. This motion is based on the attached statement of facts and memorandum of points and authorities.

Respectfully submitted,

Dated: August 17, 2008                          /s/ Antonio Yoon
                                                 _____
                                                 **ANTONIO F. YOON**
                                                 Attorney for Mr. Gutierrez

**ANTONIO F. YOON**
California Bar No. 163961
501 W. Broadway, Suite A-387
San Diego, California 92101
Telephone: (619) 544-0021

Attorney for Mr. Gutierrez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE MARILYN L. HUFF)**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>RAUL GUTIERREZ,  )<br>  )<br>    Defendant.  )<br>_____) | CASE NO. 08cr803-H<br><br>MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF<br>DEFENDANT'S MOTIONS IN LIMINE |

**I.**

**STATEMENT OF FACTS**

Mr. Gutierrez is charged with possession of marijuana with intent to distribute. He was the driver of a truck and tractor trailer when he was detained and arrested at the checkpoint on Highway 86. The trailer contained approximately 1,800 pounds of marijuana.

**II.**

**EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS SHOULD BE PRECLUDED**

The Federal Rules of Evidence require the government to give the defense notice of its intent to use 404(b) evidence of other crimes, wrongs, or acts by Mr. Gutierrez. The government has not stated or indicated that it would introduce 404(b) evidence against Mr. Gutierrez. There has been no production of any prior bad acts, arrests or convictions of Mr. Gutierrez by the government. Accordingly, this Court should enter an order prohibiting the government from introducing any evidence of prior acts by Mr. Gutierrez.

Additionally, Federal Rule of Evidence 609 allows prior convictions to be introduced for the purpose

of attacking the credibility of a witness. This rule allows the admission of evidence that an accused has been convicted of a crime, punishable by death or imprisonment in excess of one year under the law, if it is more probative than prejudicial. Evidence that any witness has been convicted of a crime may also be admitted, if it involved dishonesty or false statement, regardless of the punishment. Mr. Gutierrez has not been notified of any impeachment evidence pursuant to Rule 609 or Rule 608. Therefore, introduction of any impeachment evidence under Rule 609 or Rule 608 would be unduly prejudicial and should thus be barred.

### III.

**PROSECUTORIAL ARGUMENTS INVITING THE JURY TO "CHOOSE WHICH STORY THEY ARE GOING TO BELIEVE" AMOUNT TO BURDEN SHIFTING AND SHOULD NOT BE PERMITTED BY THIS COURT**

The government, often during closing arguments, asks the jury to decide "which story they're going to believe," arguing that this determination will reveal whether the defendant is guilty or innocent. The government's use of these arguments are misstatements of the law, replace and shift the burden of proof, and must be forbidden.

The government has the burden of proving Mr. Gutierrez's guilt beyond a reasonable doubt. 9th Cir. Crim. Jury Instr. 3.3 (1997). At issue in this trial is not whether Mr. Gutierrez can convince the jury to believe his version of the facts; the issue is whether the government has proven theirs beyond a reasonable doubt. Any invitation to pick between two competing stories is misleading and a misstatement of the law. The jury's task is to decide whether the government has proven their case -- not whether Mr. Gutierrez has proven hers. Any argument to the contrary should be precluded by this Court.

Similarly, the government might argue that the defendant "either knew or she didn't [about the presence of marijuana.]" This too misstates the law. The government must not only prove that Mr. Gutierrez participated in the possession to distribute the marijuana that was in the car, <u>they must prove this element beyond a reasonable doubt</u>. To argue that she either "knew or didn't know" ignores the reasonable doubt standard and implies a 50/50 inquiry akin to the preponderance of the evidence standard. Because Mr. Gutierrez is entitled to the correct burden of proof in this criminal prosecution, arguments as to "which story to believe" or "either she knew or didn't" should not be allowed by this court.

1
## IV.

2
## **CERTAIN EXPERT TESTIMONY SHOULD BE EXCLUDED**

3  **A.  Absent Compliance with Rule 16 and its Discovery Obligations, the Government's Experts Should Be Excluded.**
4

5       Counsel for Mr. Gutierrez anticipates that the government will attempt to introduce "Murillo" type
6  expert testimony as well as expert testimony that the substance seized is marijuana as well as the value of such
7  contraband.  Mr. Gutierrez objects to any expert testimony absent proper notice and compliance with
8  discovery obligations.  She objects to the introduction of "Murillo" expert testimony as well as to the
9  introduction of value testimony as irrelevant and overly prejudicial.  Fed. R. Evid. 403; 704(b).  In addition,
10 Mr. Gutierrez requests full compliance with Fed. R. Crim. P. 16 and discovery of the basis of the purported
11 experts' opinions.  United States v. Zanfordino, 833 F. Supp. 429, 432-33 (S.D. N.Y. 1993);  Fed. R. Crim.
12 P. 16, Fed. R. Evid. 612 and 705; 18 U.S.C. § 3500.  She seeks a pre-trial hearing under Kumho Tire
13 Company v. Carmichael, 526 U.S. 137 (1999).

14      Mr. Gutierrez has yet to receive any notice by the government of any such expert; no notice of his/her
15 name, qualifications, publications, testability or reliability.  Without any such notice to date, the government
16 may be in violation of Rule 16 and so under that basis alone the "expert" or "experts" should be excluded.
17 Such disclosure is required.  See id.; Fed R. Crim. P. 16; 705.

18      Due to the failure to comply with Rule 16 as to the value expert, the use of any such expert should be
19 excluded.

20 **B.  This Court Should Exclude the Government's Experts Unless It Discloses the Basis of Its Experts' Opinions.**
21

22      In Zanfordino, the defense requested discovery regarding the basis of the expert's testimony.  The
23 district court granted the request, noting that a cross examination conducted without that information
24 implicated due process and the Confrontation Clause.  833 F. Supp. at 432.  "If an expert is testifying based
25 in part on undisclosed sources of information, cross-examination vouchsafed by that Clause would be unduly
26 restricted."  Id.  In addition to the constitutional concerns, Zanfordino also relied, as does Mr. Gutierrez, on
27
28

Rule 16, Jencks and Fed. R. Evid. 705. Id. at 432-33.[1] Rule 16 requires disclosure of "the bases and reasons for [the expert's] opinions." Fed. R. Crim. P. 16(a)(1)(E). The Rules of Evidence impose a similar requirement: "[t]he expert may in any event be required to disclose the underlying facts or data on cross-examination." Fed. R. Evid. 705. As the Zanfordino court observed, "delaying such disclosure until [cross examination] would merely prolong the trial." 833 F.Supp. at 433. Information relied upon by an expert is clearly Jencks material, particularly when the information takes the form of reports written or adopted by the expert. See 18 U.S.C. § 3500(a), (e)(1); see also Fed. R. Civ. P. 26(b)(4) (adversary may obtain information to be relied upon by the expert).

Here, the experts may clearly intend to rely upon materials not yet produced to the defense, including reports and various reference materials. All of this information must be produced. Generally speaking, the government's typical expert "disclosure" is no more than a generalized invocation of its witnesses' experience. The actual sources of information are not produced to the defense. "If an expert is testifying based in part on undisclosed sources of information, cross-examination vouchsafed by [the Confrontation] Clause would be unduly restricted." Zanfordino, 833 F. Supp. at 432. Mr. Gutierrez's right to confront and cross examine the witnesses, guaranteed by the Sixth Amendment and effectuated by the discovery rules, will not merely be "unduly restricted" absent disclosure of the bases of the opinions, it will be eviscerated. Because trial is fast approaching, and no discovery has been provided, the experts should be excluded.[2]

**C.     Admission of "*Murillo*" Testimony is Irrelevant, Inappropriate and Overly Prejudicial in this Case.**

No authority, including United States v. Murillo, 255 F.3d 1169 (9th Cir. 2001), permits the introduction of testimony regarding "modus operandi" or drug organizations. First, the facts of Murillo which permitted admission of this testimony, are entirely distinct from the facts of this case. Additionally, this "Murillo" testimony has no possible application to this simple case. Finally, notwithstanding Murillo, a prior *en banc* decision of this Circuit does not permit admission of this testimony.

---

    1 The government may argue that the amount of material it is obligated to produce might be large. Even so, the fact that the material may be voluminous is not a basis for declining to order the necessary disclosure. See United States v. Roark, 924 F.2d 1426, 1430-32 (8th Cir. 1991); United States v. Allen, 798 F.2d 985, 1000 (7th Cir. 1986).

    2 The government must identify when or where any of its proposed experts have testified.

1. **The Facts of *Murillo* Are Distinct from this Case.**

Unlike this case, Murillo did not involve an individual with no prior connection to drug trafficking, but, rather, it involved a traffic stop of a repeat courier, traveling as was his custom, in a rental car. Evidence was introduced that Mr. Murillo had rented numerous cars previously to take them on trips similar in length to this trip.[3] 255 F.3d at 1175. The drugs at issue in Murillo were methamphetamine and cocaine in quantities worth nearly a million dollars. Id. Mr. Murillo had consistently presented the defense that he had just rented a car and drove this long distance in a short time to pick up his mother. Id. Finally, Mr. Murillo designated a fingerprint expert pretrial and presented evidence regarding the lack of fingerprints. Id. at 1176.

If anything Mr. Gutierrez's case better resembles the facts set forth in this Court's previous decision, United States v. Vallejo, 237 F.3d 1008, as amended, 241 F.3d 1150 (9th Cir. 2001), where a defendant is crossing the border and 48 kilograms of marijuana are discovered concealed within the car. In Murillo, this Court specifically recognized the factual differences, 255 F.3d at 1177 ("Vallejo presented different facts than the instant case"), especially relying upon Mr. Murillo's introduction of fingerprint evidence to justify admission of the challenged testimony. See id. at 1177 ("We acknowledged the significant import of this factual difference (the fingerprint evidence) in Vallejo") (citation omitted). All of these facts, discussed in detail in Murillo, led to admission of the testimony regarding: "the typical travel itineraries of drug couriers, why drug couriers use rental cars, and how drug traffickers do not entrust large quantities of drugs to people who are unaware that they are transporting them." Id. at 1176. In fact, in distinguishing its result from Vallejo, the Murillo Court notes that the factual underpinnings of its case and the evidence admitted limited the "modus operandi" testimony:

> Agent Delaney limited his testimony to the modus operandi of drug couriers. Agent Delaney did not extrapolate the various roles individuals might play in hypothetical drug trafficking organizations, nor did he imply that Murillo participated in a large-scale operation.

Murillo, 255 F.3d at 1176. Again, it was quite clear in Murillo that this testimony was admitted to counter specific defenses, i.e., that Murillo had to drive a long distance in a short time to pick up his mother (hence, the testimony about the prior rental cars, and their significance), and his fingerprint defense, which he announced pretrial. Id. Here, in this case, the majority of this testimony has no application -- surely the

---

[3] These were trips of several days duration and over 1,000 miles in distance. Murillo, 255 F.3d at 1175.

government does not plan to introduce testimony that someone who drives a truck is a drug smuggler nor can they have an expert opine about rental cars since the vehicle Mr. Gutierrez was a passenger in was neither crossing the border nor was it a rental car. Thus, all the prosecutor would intend to do by introducing Murillo testimony is to parse it out, separate it from its factual underpinnings, and introduce the one fragment that suits the government. To permit this would be error. The facts of Murillo and are, are so distinct from this case that they render the testimony introduced there the latter entirely inapplicable here.

### 2. The Ninth Circuit Has Made Abundantly Clear That Admission of this Testimony Violates Rule 403.

The Ninth Circuit held in United States v. Pineda-Torres, 287 F.3d 860 (9th Cir. 2002), that the district court committed prejudicial error when it admitted expert testimony regarding the structure of drug trafficking organizations in a simple, non-complex drug case. Pursuant to Fed. R. Evid. 403, the court found that this was reversible error because of the extreme prejudice suffered by the defendant in admitting such evidence. Furthermore, the court held that because there was "no direct evidence associating the defendant with a drug-trafficking organization," the prosecution cannot use a typical structure "blueprint" to impute knowledge of the existence of drugs by the defendant through an expert witness. Id. at 865.

The Ninth Circuit further distinguished Vallejo from Murillo, adopting the reasoning of Vallejo in a small-scale, border-related drug seizure where there is no evidence of a complex smuggling organization. Id. at 863-64. ("The case before us is, in almost all respects, similar to the United States v. Vallejo."); see also United States v. McGowan, 274 F.3d. 1251 (9th Cir. 2001) (holding that expert testimony regarding drug trafficking organizations is not admissible in a non-conspiracy drug importation case). Because Mr. Gutierrez's case is more similar to that of the defendants in Pineda-Torres, McGowan, and Vallejo, this Court clearly should prevent the government from introducing any expert testimony regarding the structure of drug-trafficking organizations.

### 3. Admission of this Testimony Violates Rule 704(b).

Even if Murillo could have the broad application that has been urged by the government in the past, and even if this Court were to ignore the factually similar cases, such as Pineda-Torres, McGowan, and Vallejo, prior more authoritative precedent nevertheless precludes its admission. In United States v. Morales, 108 F.3d 1031, 1037 (9th Cir. 1997), this Circuit, sitting *en banc* held that Federal Rule of Evidence 704(b)

does not permit expert witnesses to comment upon the mental state of a defendant in a criminal case where the mental state constitutes an element of the offense. Id.; Fed. R. Evid. 704(b). To the extent that Murillo suggests otherwise, such suggestion cannot be followed. See 255 F.3d at 1178 (relying upon pre-Morales cases, stating that only "an explicit opinion" of Murillo's state of mind was inadmissible). A panel decision's reliance upon these pre-Morales cases cannot control this issue -- Morales itself expressly addresses the "prohibited 'opinion or inference'" to be drawn which would impermissibly comment upon mental state. Morales, 108 F.3d at 1037. As an en banc decision of this Circuit, Morales cannot be overruled or even limited by a three-judge panel decision such as Murillo. See, e.g., United States v. Caperna, 251 F.3d 827, 831 (9th Cir. 2001) (["T]o the extent Daas and the subsequent en banc decision in Banuelos-Rodriguez were inconsistent, we, of course, would be bound by the en banc case"); Rand v. Rowland, 154 F.3d 952, 964 (9th Cir.1998) (en banc) (Reinhardt, J., concurring) ("After all, overruling precedent is an important function that is expressly reserved to the en banc court, and a panel is ordinarily not free to do so."); In re the Exxon Valdez, 270 F.3d 1215, 1235 (9th Cir. 2001) ("One three judge panel may reconsider the decision of a prior panel only when 'an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point.'"). Thus, this Court is obligated to follow Morales and Morales does not permit this testimony.

**D.     Expert Testimony On "Retail Value" Is Barred By the Federal Rules of Evidence and Ninth Circuit Case Law.**

     **1.     Value Testimony Is Irrelevant and Overly Prejudicial.**

The Government will likely seek to introduce evidence of the commercial value of the marijuana allegedly possessed and imported in this case. While the Government may argue that a valuable load of narcotics would not be entrusted to an unknowing party, the Court should preclude its witnesses from testifying to this inference as an established fact. Mr. Gutierrez submits that any reference to the value of the marijuana involved in this case would be more prejudicial than probative, such that it should be excluded under Fed. R. Evid. 403. There is no evidence that Mr. Gutierrez is involved in street level sales nor is there any evidence that any source of supply here was so involved. Retail value is therefore irrelevant and overly prejudicial.

**2.  Expert Witness Testimony Regarding Value Also Involves Impermissible Structure Evidence.**

Mr. Gutierrez objects to value testimony for two further reasons: (1) to the extent that this testimony seeks to comment on the defendant's mental state, it is admissible under of Fed. R. Evid. 704; and (2) any "value expert" actually would intend to introduce "structure" testimony that directly conflicts with the recent Ninth Circuit decisions United States v. McGowan, 274 F.3d 1251 (9th Cir. 2001), and United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001). Under clear Ninth Circuit precedent, this sort of expert testimony is inadmissible and invites reversible error. It should be excluded as a result.

**a.  Any Testimony Asserting That Mr. Gutierrez Must Have Possessed Knowledge of the Marijuana in the Vehicle Because of its Supposed Street Value Violates Fed. R. Evid. 704 and must Be Excluded.**

One of the major reasons that the government often seeks to introduce value expert testimony is to demonstrate that the defendant must have known of the presence of drugs in the car. Because the drugs are valuable, the argument runs, drug smugglers would not entrust them to unknowing couriers. The Federal Rules of Evidence and controlling case law, however, specifically forbid this chain of inference in the form of expert testimony.

Fed. R. Evid. 704 provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Ninth Circuit case law holds that this rule applies any time an expert seeks to opine on a defendant's knowledge, willfulness, or other mental state. See United States v. Morales,108 F.3d 1031, 1036 (9th Cir. 1997) ("[t]he language of Rule 704(b) is perfectly plain. It does not limit its reach to psychiatrists and other mental health experts. Its reach extends to all expert witnesses"); United States v. Webb, 115 F.3d 722 (9th Cir. 1997) (holding it impermissible under Fed. R. Evid. 704(b) for expert to testify, even in hypothetical form, whether defendant knew of weapons concealed in car.). Indeed, knowledge, the primary contested issue in this trial, is a mental state. Any proposed expert who would opine -- directly or indirectly -- that Mr. Gutierrez must have known that the intent of her actions testifies to her mental processes or condition.

Whatever the form, the government may not use the trappings of "expertise" to bolster speculation on Mr. Gutierrez's alleged knowledge. This testimony is expressly forbidden by Fed. R. Evid. 704 and by Ninth Circuit law. Drug value testimony must not be used to circumvent these established evidentiary rules.

        **b.    Any "Value Expert" Actually Seeks to Sneak Forbidden "Structure Testimony" into this Trial in Contravention of *United States v. McGowan* and *United States v. Vallejo*.**

Even if a government expert is allowed to testify in this trial at all, the specific testimony regarding value must be excluded. This proposed opinion is nothing more than "structure testimony" offered through a value expert. It invites reversible error as a result.

In <u>United States v. Vallejo</u>, 237 F.3d 1008 (9th Cir. 2001), the Ninth Circuit held that structure testimony is inadmissible in a non-complex, non-conspiracy drug smuggling case. As the court wrote, "*To admit this testimony on the issue of knowledge, the only issue in the case, was unfairly prejudicial, and an abuse of discretion under Rule 403.*" <u>Id.</u> at 1017. More recently, the Ninth Circuit affirmed the teaching of <u>Vallejo</u> in <u>United States v. McGowan</u>, 274 F.3d 1251 (9th Cir. 2001). In <u>McGowan</u>, the Court again reversed a district court judge for admitting such expert testimony, holding that it amounted to an abuse of discretion under Fed. R. Evid. 403. <u>Id.</u>

Such value testimony runs afoul of <u>McGowan</u> and <u>Vallejo</u>. Any testimony -- direct or indirect -- as to the responsibility of drivers due to the value of the drugs contained within the car presupposes a compartmentalized, organized drug smuggling network. It assumes that the drivers know that drugs exist in the vehicles, and couches the endeavor in terms of a "job" willingly taken on by the driver of the car. This testimony essentially seeks to assume out of existence the key issue in this trial: whether Mr. Gutierrez knew that drugs were in the vehicle. Such testimony is improper, and should not be allowed here. It must be excluded.

**E.    This Court Should Conduct A Pre-Trial Hearing To Determine the Admissibility of Expert Testimony.**

Mr. Gutierrez requests a <u>Kumho</u> hearing on the qualifications and relevance of the any expert testimony. There is no doubt that "some of <u>Daubert's</u> questions can help to evaluate the reliability of even experience-based testimony." <u>Kumho</u>, 526 U.S. at 151 (citing <u>Daubert v. Merrel Dow Pharmaceuticals</u>, 509 U.S. 579 (1993)). Moreover, the Ninth Circuit has recognized that <u>Daubert</u> is equally applicable to non-

1  scientific expert testimony, even though the four <u>Daubert</u> factors need not be present in every case.  <u>United</u>
2  <u>States v. Hankey</u>, 203 F.3d 1160, 1168-69 and n.7 (9th Cir. 2000) (citing <u>Skidmore v. Precision Printing and</u>
3  <u>Packaging, Inc.</u>, 188 F.3d 606, 618 (5th Cir. 1999)); <u>but see Kumho</u>, 526 U.S. at 159 ("the failure to apply one
4  or another of [the <u>Daubert</u> factors] may be unreasonable, and hence an abuse of discretion") (Scalia, J.,
5  concurring).  Thus, any suggestion that some standard other than <u>Daubert</u> applies is erroneous.

V.

**<u>THIS COURT SHOULD PRECLUDE THE USE OF GUILT-ASSUMING HYPOTHETICALS</u>**

**A.    <u>A "Guilt-assuming" Question Is a Question in Which the Prosecutor Uses the Facts Underlying the Defendant's Arrest in the Present Case to Attack the Testimony of the Defendant's Character Witnesses.</u>**

"Guilt-assuming" questions come in many forms.  <u>See e.g.</u>, <u>United States v. Barta</u>, 888 F.2d 1220, 1225 (8th Cir. 1989) (cross-examination questions regarding whether the defense character witness is familiar with the facts underlying the charge "exceed the bounds of propriety, premised, as [such questions] are, on a presumption of guilt"); <u>United States v. Siers</u>, 873 F.2d 747, 749 (4th Cir. 1989) (in case where the defendant was asserted self-defense, improper cross to ask, "Would it change your opinion of [the defendant] being a peaceful person if she shot an individual and wounded him with a sawed-off shotgun?"); <u>United States v. Candelaria-Gonzalez</u>, 547 F.2d 291, 293-94 (5th Cir. 1977) ("Government counsel on cross-examination asked if [the defendant's] indictment would affect the witness' opinion of him and his reputation in general"). The common element in all these questions -- and the reason courts forbid them -- is that the prosecutor is using the facts underlying the defendant's arrest to attack a defense character witness' testimony.  In essence, the prosecutor is seeking to bootstrap a conviction from an arrest by taking the position that because the defendant was arrested, it is unreasonable for the defendant to have a good reputation, or for anyone to have a positive opinion of the defendant's character.

**B.    <u>"Guilt-Assuming" Questions are Contrary to the Presumption of Innocence, are Analogous to Prosecutorial "Vouching," and are Inconsistent with the Jury's Role as the Ultimate Fact-Finder.</u>**

    **1.    <u>"Guilt-Assuming" Questions Are Contrary to the Presumption of Innocence.</u>**

The most glaring problem with "guilt-assuming" questions is that *they are inconsistent with the presumption of innocence to which a defendant is entitled under the law*.  As a result, courts have condemned their use in the strongest terms: "We think, recollecting the trial of Galileo for heresy, the Salem witchcraft

1  trials, and the trial of the Knave of Hearts, where an assumption of guilt was so strong it prompted the Queen
2  to say 'sentence first -- verdict afterward,' that to avoid these stains on the fabric of a fair trial courts must
3  diligently guard against this type of unjust questioning." United States v. Damblu, 134 F.3d 490, 491 (2d Cir.
4  1998); see also United States v. Mason, 993 F.2d 406, 409 (4th Cir. 1993) ("adherence to a basic concept of
5  our justice system, the presumption of innocence, is not served by this line of questioning"); United States
6  v. Barta, 888 F.2d 1220, 1224 (8th Cir. 1989) (guilt-assuming questions "unfairly undermin[e] the
7  presumption of innocence"); United States v. Candelaria-Gonzalez, 547 F.2d 291, 294 (5th Cir. 1977) (guilt-
8  assuming questions "str[ike] at the very heart of the presumption of innocence which is fundamental to Anglo-
9  Saxon concepts of a fair trial").

      2.      **"Guilt-Assuming" Questions Are Analogous to Prosecutorial "Vouching."**

A second problem with "guilt-assuming" questions is that they "suggest [to the jurors] that there may be evidence of [the] defendant's guilt in the hands of the prosecutor that goes beyond the evidence before the jury." Damblu, 134 F.3d at 495. Backed by the full weight and prestige of the Government of the United States of America, the prosecution suggests that the character witness should reassess the defendant's character, the obvious implication being that the defendant is guilty. This is analogous to prosecutorial vouching. Cf. Barta, 888 F.2d at 1225 ("These questions permitted the government to improperly bolster the weight of its own evidence by implying that the witnesses might have answered differently had they heard the same evidence as the jury"). A prosecutor's use of such inappropriate questions also puts the character witness in a "Catch-22" type situation: he can either (1) maintain his position and appear less than credible as a result of the prosecutor's attack; or (2) agree with the prosecutor and essentially cast a thirteenth vote for conviction. The unfairness of this line of questioning is highlighted when one considers that the character witness' role is to shed light on the defendant's character so the jury can assess whether the defendant is the kind of person who could have committed crime the charged. A skilled prosecutor, however, can employ "guilt-assuming" questions to effectively deprive any defendant (no matter how outstanding his character and reputation may be) of positive character testimony. The message is that a person charged with a crime is <u>not</u> entitled to have a good reputation or to have a witness with a good opinion of his character testify to that fact in court.

      3.      **"Guilt-Assuming" Questions Are Inconsistent with the Jury's Role as the Ultimate Fact-Finder.**

A final problem with guilt-assuming questions is that they corrupt of the jury's role as ultimate fact-finder. Asking a character witness whether her opinion has changed based on limited facts surrounding the defendant's underlying arrest is tantamount to asking whether she believes the defendant to be guilty based on those facts; logically, a change in opinion would be premised on the belief that the defendant is guilty. Of course, it is improper to ask a witness for such an opinion directly.

Moreover, while guilt-assuming questions can be highly prejudicial, they have no probative value; jurors can decide themselves what significance to attach to the fact that the defendant has been charged with committing the act averred in the indictment. Indeed, that is the jury's role. See United States v. Oshatz, 912 F.2d 534, 538 (2d Cir. 1990) ("Insofar as non-expert character witnesses are concerned . . . we believe that the probative value of hypothetical questions such as the one at issue herein is negligible and should not be asked. The jury is in as good a position as the non-expert witness to draw proper inferences concerning the defendant's character from its own resolution of the issue.") (citation omitted).

Therefore, Mr. Gutierrez requests that this Court preclude the use of such guilt-assuming hypotheticals.

**VI.**

**THE COURT SHOULD NOT SEND THE INDICTMENT INTO THE JURY ROOM DURING DELIBERATIONS**

In the commentary to Model instruction 3.2.1, "Charge Against Defendant Not Evidence," the Committee on Model Jury Instructions, in the Ninth Circuit Manual of Model Jury Instructions, strongly recommends that the Indictment not be sent into the jury room during deliberations. The commentary observed that neither the Federal Rules of Criminal Procedure nor case law require sending a copy of the indictment to the jury room because the indictment is not evidence.

Mr. Gutierrez urges this Court to follow the Committee's guidance. The language in the instant Indictment intentionally mirrors the language of the charged statutes. Accordingly, jurors could be improperly persuaded by the similarities between the Indictment allegations and the elements of the crime. Because the Indictment is not evidence, but could potentially be mistaken for such, this document should not be permitted

into the jury room during deliberations.[4]

## VII.

## MR. GUTIERREZ'S COUNSEL SHOULD HAVE THE OPPORTUNITY TO VOIR DIRE THE JURY

Pursuant to Fed. R. Crim. P. 24(a), to provide effective assistance of counsel and to exercise Mr. Gutierrez's right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

## VIII.

## MOTION FOR GRAND JURY TRANSCRIPTS

The Court should make Grand Jury transcripts available if the defense can show a particularized need. The particularized need present in this case is that defense counsel anticipates at least one witness who testified before the Grand Jury will testify during the trial. The government must produce a transcript of a witness' testimony before the Grand Jury after direct examination of the witness at the motions hearing or at trial. 18 U.S.C. § 3500; Dennis v. United States, 384 U.S. 855 (1966); FED. R. CRIM. P. 26.2(f)(3). The defense requests the government make such transcripts available in advance of the trial to facilitate the orderly presentation of evidence and remove any need for a recess in the proceedings for defense counsel to examine the statement pursuant to Fed. R. Crim. P. 26.2(d).

## IX.

## THIS COURT SHOULD EXCLUDE ALL EVIDENCE OF Mr. GUTIERREZ'S POST-ARREST DEMEANOR

To the extent the government would seek to introduce evidence of Mr. Gutierrez's post-arrest, pre-Miranda silence or demeanor as substantive evidence of guilt or in impeachment, she files this anticipatory motion. The government should be prohibited from introducing such evidence.

First, reactions to this type of situation will vary widely based on various factors, including one's life experiences, educational level, age, gender, and the circumstances surrounding the arrest. Thus Mr.

---

   4 Should the Court allow a copy of the indictment to be sent to the jury room, the Court should caution the jury that the indictment is not evidence. See United States v. Utz, 886 F.2d 1148, 1151-1152 (9th Cir. 1989).

1  Gutierrez's reaction, if any, is not probative of anything. See FED. R. EVID. 401, 402; see also Doyle v. Ohio,
2  426 U.S. 617, 617-19 (1976) (stating that post-arrest silence is, at best, inherently ambiguous, and cannot be
3  considered inconsistent with defensive matters raised at trial; holding the use of a suspect's silence, at the time
4  of arrest and after receiving Miranda warnings, violates the Due Process Clause of the Fourteenth
5  Amendment).

6  Second, such evidence is potentially highly prejudicial, and it should not be allowed on that basis as
7  well. See FED. R. EVID. 403; Jenkins v. Anderson, 447 U.S. 231, 239 (1980); United States v. Hale, 422 U.S.
8  171, 180-81 (1975); Stewart v. United States, 366 U.S. 1, 5 (1961); Grunewald v United States, 353 U.S. 391,
9  424 n.5 (1957).

10  At trial, the government may seek to introduce evidence of Mr. Gutierrez's post-arrest, pre-Miranda
11  silence or demeanor. Such testimony is improper. See United States v. Whitehead, 200 F.3d 634, 637-40 (9th
12  Cir. 2000). Thus, the government should be prohibited from eliciting such testimony regarding Mr.
13  Gutierrez's post-arrest, pre-Miranda silence or demeanor.

## X.
## MR. GUTIERREZ REQUESTS LEAVE TO FILE FURTHER MOTIONS

As additional information comes to light, the defense may find it necessary to file further motions. Mr. Gutierrez hereby requests leave to do so.

## XI.

## CONCLUSION

For the foregoing reasons, Mr. Gutierrez respectfully requests that this Court grant these motions in limine, as well as these other motions for trial.

Respectfully submitted,

DATED: August 17, 2008                /s/ Antonio Yoon
                                       **ANTONIO F. YOON**.
                                       Attorney for Mr. Gutierrez

|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **SOUTHERN DISTRICT OF CALIFORNIA** | |

**UNITED STATES OF AMERICA,** )
                                )
      Plaintiff,          )     U.S.C.D. No. 08cr803-H
                                )
v.                                    )
                                )
**RAUL GUTIERREZ,**           )     CERTIFICATE OF SERVICE BY ECF
                                )
      Defendant.        )
                                )
_____)

     I, the undersigned, say:

     1.  That I am over eighteen (18) years of age, a resident of the County of San Diego, State of California, not a party in the within action, and that my business address is 501 W. Broadway, Suite A-387, San Diego, California, 92101; and

     2.  That I filed the within <u>Defendant's Motions in Limine</u> by electronically filing them through the CM/ECF service;

     3.  That I served the within on counsel for Plaintiff by electronic means:

            Alessandra Serrano, Assistant United States Attorney

as evidenced by the attached and incorporated by reference ECF.

     I certify that the foregoing is true and correct. Executed on August 17, 2008 , at San Diego, California.

                                          /s/ Antonio Yoon
                                         Antonio F. Yoon